IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CLEVE TRIMBLE,<br><br>            Plaintiff,<br><br>    vs.<br><br>BEN HELWIG, and WILDLIFE OUTDOOR PRODUCTIONS LLC, a New Jersey limited liability company;<br><br>            Defendants. | **7:19-CV-5015**<br><br>**MEMORANDUM AND ORDER** |

This case comes before the Court on defendant Wildlife Outdoor Production, LLC's ("Wildlife's") Motion to Dismiss and Strike. Filing 13. Defendant Ben Helwig joins that motion and Wildlife's briefing in support thereof.[1] Filing 16. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek dismissal of Plaintiff's, Cleve Trimble's, unenumerated claims for violations of the Lacey Act, 16 U.S.C. § 3371 et seq; replevin and/or damages pursuant to Neb. Rev. Stat. § 37-722; and common-law unjust enrichment and disgorgement. Filing 14 at 3-9. Defendants also request an order under Federal Rule of Civil Procedure 12(f) striking plaintiff Trimble's request for punitive damages from his Complaint (Filing 1) on the basis that Nebraska law controls and prohibits punitive damages. Filing 14 at 9-10. Defendants do not seek to dismiss any claim for trespass to land. Additionally, Defendants question whether the amount in controversy is adequate to confer subject-matter jurisdiction.

For the reasons stated herein, the Court finds it has subject-matter jurisdiction. The Court then grants in part and denies in part Defendant's Motion to Dismiss by dismissing any claim predicated upon the Lacey Act and Nebraska's criminal trespass statute but denying the motion as to Plaintiff's claims for unjust enrichment, disgorgement, and replevin. The Court finds that

---

[1] The Court will collectively refer to Wildlife and Helwig as "Defendants."

1

Nebraska law controls and grants Defendant's Motion to Strike the request for punitive damages. Thus, Plaintiff's remaining claims include unjust enrichment and disgorgement, replevin, and common-law trespass to land.

## I.   BACKGROUND[2]

### A.   Factual Basis

Plaintiff Trimble owns land in Cherry County, Nebraska (the "Trimble Property"). Filing 1 at 2. Public records show Plaintiff has owned the Property since 1986. Filing 1 at 2. Public records further indicate that the Trimble Property is and has been subject to a conservation easement prohibiting commercial hunting since 2006. Filing 1 at 3. The Trimble Property's boundaries are and have been marked by a fence line and attached to that fence are "no hunting" and "no trespassing" signs. Filing 1 at 3.

The Nebraska Board of Educational Lands and Funds ("BELF") owns land adjoining the Property to the west and north. Filing 1 at 2. The boundaries between BELF's land and the Trimble Property are marked by a fence line and the aforementioned signs, and the Cherry County plat book, aerial maps, and GIS maps all show the ownership of and boundaries between BELF's land and the Property. Filing 1 at 3. Defendant Helwig is a subtenant of BELF's land, and both defendants use BELF's land for commercial hunting purposes. Filing 1 at 2-3. Since 2016, Defendants have "entered and occupied" the Trimble Property for commercial hunting purposes without Trimble's permission. Filing 1 at 4. Plaintiff alleges Defendants (1) removed the "no hunting" and "no trespassing" signs from the Trimble fence line, (2) entered the Trimble Property

---

[2] Although Defendants may dispute some of the facts recited herein, when deciding a motion to dismiss, the Court "must accept a plaintiff's factual allegations as true" and make all reasonable inferences in favor of the nonmoving party. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768–69 (8th Cir. 2012). Alleged facts will not automatically be accepted as true in any final disposition or trial of this matter.

to install wildlife cameras and attract animals, (3) used photographs of the Trimble Property on their website to promote their commercial hunting business, (4) used the Trimble Property to hunt and kill wild animals, and (5) earned revenue and profit as a result of these actions. Filing 1 at 4-5.

While the Trimble Property is located in Nebraska, in support of their claim that New Jersey law applies to this dispute, Plaintiff alleges that "Defendants are based in New Jersey, the scheme of wrongful conduct was devised, implemented, controlled and directed in and from New Jersey, and all benefits, monetary and otherwise, to Defendants by reason of their wrongful conduct have been received in New Jersey. Filing 1 at 5.

### B. Procedural History

Trimble filed this action on December 10, 2019. Filing 1. The Complaint (Filing 1) does not enumerate any particular causes of action. Instead, it makes sporadic references to statutes and some common-law causes of action. First, it alleges Defendants' actions violate Neb. Rev. Stat. § 37-722 which prohibits the taking of "any wildlife upon any private lands without permission" and expressly allows for replevin of animals or pelts taken from private land without permission. Filing 1 at 4. Second, it alleges Defendants were unjustly enriched by their actions and should disgorge that enrichment. Filing 1 at 5. Third, Trimble alleges Defendants' conduct violates the Lacey Act, 16 U.S.C. § 3371 et seq, relating to the illegality of taking wildlife in violation of state law.[3] Filing 1 at 5. Fourth, Trimble alleges he is entitled to punitive damages under federal and New Jersey law. Filing 1 at 6. Finally, Trimble appears to request actual damages, punitive damages,

---

[3] In the same sentence as his allegations about the Lacey Act, Trimble states that Defendants also violated Neb. Rev. Stat. § 28-521, Nebraska's criminal-trespass statute. Filing 1 at 5. Defendant does not move to dismiss this allegation, and Trimble, in his brief, explains that he cited to criminal statutes not as causes of action but to show "intentional, willful, wanton" conduct in support of his punitive damages claim. Filing 17 at 3-4. Furthermore, even if Trimble cited Neb. Rev. Stat. § 28-521 as a separate claim, it would be dismissed because the statute does not provide a private cause of action. Accordingly, the Court will not further address the criminal-trespass issue.

disgorgement, replevin, and costs. Filing 1 at 6. Trimble seeks "actual damages in an amount to be determined by the jury, but not less than $75,000." Filing 1 at 6.

On February 10, 2020, Wildlife filed the present Motion to Dismiss and Strike. Filing 13. On February 14, Helwig filed a motion joining Wildlife's motion and briefing. Filing 16. The Court addresses these motions below.

## II.  DISCUSSION

### A.  Standards of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Cty.*, 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Ashcroft*, 556 U.S. at 678).

Federal Rule of Civil Procedure 12(f) permits a Court to strike certain material from a pleading. Fed. R. Civ. P. 12(f). "Because the rule is stated in the permissive . . . it has always been understood that the district court enjoys 'liberal discretion' thereunder." *Stanbury Law Firm v.*

*I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) (quoting *Thor Corp. v. Automatic Washer Co.*, 91 F. Supp. 829, 832 (S.D. Iowa 1950)).

## B.  Subject-Matter Jurisdiction

Defendants do not dispute the diversity of the parties but in passing argue the amount in controversy required by 28 U.S.C. § 1332 is lacking. Filing 14 at 6. Specifically, Defendants contend replevin is the only proper cause of action and argue Trimble failed to allege the value of the animals and pelts taken, which Defendants contend was not greater than $75,000. Filing 14 at 6.

"[T]he amount in controversy is measured by the value to the plaintiff of the right sought to be enforced," exclusive of interest and costs. *Federated Mut. Ins. Co. v. Moody Station & Grocery*, 821 F.3d 973, 976–77 (8th Cir. 2016). Generally, a complaint making a good faith allegation of the jurisdictional amount in controversy is sufficient to confer jurisdiction. *Scottsdale Ins. Co. v. Universal Crop Prot. All., LLC*, 620 F.3d 926, 931 (8th Cir. 2010). However, "[i]f the defendant challenges the plaintiff's allegations of the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of the evidence." *Peterson v. The Travelers Indem. Co.*, 867 F.3d 992, 995 (8th Cir. 2017) (quoting *Kopp v. Kopp*, 280 F.3d 883, 884–85 (8th Cir. 2002)). A complaint will be dismissed if it appears to a legal certainty that the claim is really for less than the jurisdictional amount.[4] *Kopp*, 280 F.3d at 884. "The legal certainty standard is met

---

[4] "When the 'legal certainty' standard . . . is combined with the burden of proof . . . , it appears that the relevant legal rule is that the proponent of diversity jurisdiction must prove a negative by a preponderance of the evidence in order to avoid dismissal of his or her case." *Kopp*, 280 F.3d at 885. The *Kopp* Court rephrased this standard as follows: "The district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude, from the pleadings and proof adduced to the court before trial, that the damages that the plaintiff suffered are greater than $75,000." *Id.* The *Kopp* Court emphasized that this standard "does not suggest that unliquidated damages in some specific amount must be proved before trial by a preponderance of evidence." *Id.*

where the legal impossibility of recovery is so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Peterson*, 867 F.3d at 995.

Trimble has alleged the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because "[t]he amount in controversy exceeds $75,000 exclusive of interests and costs" and requests "actual damages . . . not less than $75,000." Filing 1 at 2, 6. Defendants only challenge the amount in controversy because they ignore, or assume dismissal of, Trimble's trespass, unjust enrichment, and disgorgement claims.

The Court cannot conclude with "legal certainty" by a preponderance of the evidence that Plaintiff's claims will total less than $75,000. *Peterson*, 867 F.3d at 995. Phrased differently, "the legal impossibility of recovery is" not "so certain as virtually to negative [Trimble's] good faith in asserting the claim." *Id.* Accordingly, Trimble has established that the amount in controversy requirement is met, and the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. 1332(a).

While the Court finds it has diversity jurisdiction at this point in the proceedings, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Accordingly, should discovery conclusively illustrate that the amount in controversy is not met, the Court would be obligated to reconsider at that time.

## C.  Motion to Dismiss

Defendants seek to dismiss Trimble's entire Complaint and argue (1) the Lacey Act does not provide a private right of action; (2) Neb. Rev. Stat. § 37-722 only allows for replevin and not damages; (3) unjust enrichment is inapplicable; and (4) disgorgement is disallowed for trespass. *See* Filing 14. However, Defendants do not move to dismiss any claim the Complaint may state for trespass to land. As discussed below, the Court will dismiss any claims for violation of the

Lacey Act and Nebraska's criminal trespass statute. However, Trimble has stated viable claims for unjust enrichment and disgorgement along with replevin. Any other unenumerated but factually supported claims the Complaint may state survive as Defendants did not move to dismiss them.

### 1. Lacey Act

Defendants first seek to dismiss Trimble's unenumerated claim for alleging one or many violation(s) of the Lacey Act.[5] Filing 1 at 3-5. Defendants argue the Lacey Act does not provide a private cause of action because (1) it does not expressly provide for one and (2) there is no indication Congress intended to create a private cause of action. Filing 14 at 3-4. In response, Trimble concedes that the Lacey Act "provides for civil penalties and potential criminal remedies" rather than a private cause of action. Filing 17 at 3. Further, Trimble notes that he "did not plead a cause of action under the Lacey Act" but instead "cited to [it] in his Complaint as federal public policy in support of his punitive damages claim." Filing 17 at 3.

Accordingly, the Court will dismiss any claim predicated upon a violation of the Lacey Act because, as all parties agree, it does not provide a private cause of action. Further, Trimble admits he did not intend the alleged violation of the Lacey Act to form the basis for a cause of action.

### 2. Neb. Rev. Stat. § 37-722

Defendants next seek to dismiss Trimble's claim against them for replevin under Neb. Rev. Stat. § 37-722 for failure to state a claim. Filing 14 at 5-6. Defendants argue the statute only allows for replevin of animals or pelts and does not allow for damages or monetary compensation. Filing 14 at 5-6. Trimble responds that he merely cited Neb. Rev. Stat. § 37-722 in an effort to show the

---

[5] As is relevant here, the Lacey Act is a criminal statute that makes it "unlawful for any person . . . to import, export, transport, sell, receive, acquire, or purchase any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State." 16 U.S.C. § 3372(a)(2)(A). Selling wildlife occurs when a person offers or provides "guiding, outfitting, or other services" for money "for the illegal taking, acquiring, receiving, transporting, or possessing of fish or wildlife. 16 U.S.C. § 3372(c)(1)(A).

wrongfulness of Defendants' conduct and that the enumerated remedy of replevin is not the only remedy available to him. Filing 17 at 4-7.

Neb. Rev. Stat. § 37-722 provides as follows:

> It shall be unlawful for anyone to take any wildlife upon any private lands without permission of the owner. It shall be unlawful for anyone to trap or otherwise harvest fur-bearing animals upon the lands of another without his or her consent. Animals and the pelts thereof taken contrary to this section may be replevied by the owner of the lands. For purposes of this section, owner means the actual owner of the land and any tenant or agent in possession or charge thereof for him or her.

The Court agrees with Defendants that Neb. Rev. Stat. § 37-722's plain language provides only for replevin of animals or pelts, not damages. Further, the parties have not provided, and the Court has not found, case law allowing damages predicated upon this statute. While Defendants argue Trimble has not alleged the specific animals or pelts he seeks to replevy, *see* Filing 14 at 5-6, and Trimble admits "[i]t would be highly unusual if Defendants still, if ever, possessed the wildlife hunted on [the Property]," *see* Filing 17 at 5, Trimble has still alleged sufficient facts (the killing and taking of animals on his property without permission) to state a claim for a violation of Neb. Rev. Stat. § 37-722. *See* Filing 1 at 4. Accordingly, Trimble can proceed on his action to replevy any animals or pelts taken by Defendants, should any such animals or pelts exist.

*3. Unjust Enrichment and Disgorgement*

Defendants next seek to dismiss Trimble's claim against them for unjust enrichment and also argue to dismiss any request for disgorgement. Filing 14 at 7-9. Defendants argue Nebraska law does not allow claims of unjust enrichment premised upon trespass because unjust enrichment is based on restitution for harm done. Filing 14 at 7. Defendants also argue unjust enrichment is limited to quasi-contractual claims and does not apply to other wrongs. Filing 14 at 7. Finally, Defendants argue disgorgement is not proper for breach-of-contract claims and is thus not proper here. Filing 14 at 8-9. The Court finds Defendants' arguments unpersuasive.

"An unjust enrichment claim embodies the equitable doctrine that one will not be allowed to profit or enrich oneself unjustly at the expense of another." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 755 (8th Cir. 2006) (citing *Hoffman v. Reinke Mfg. Co.*, 227 Neb. 66, 416 N.W.2d 216, 219 (1987)). "When the inequitable and unconscionable retention of a benefit occurs, Nebraska law requires the recipient to pay for the reasonable value of the benefit received." *Id.* (citing *Bush v. Kramer*, 185 Neb. 1, 173 N.W.2d 367, 369 (1969)). "Unjust enrichment requires restitution, which measures the remedy by the gain obtained by the defendant, and seeks disgorgement of that gain." *Id.* (quoting *Trieweiler v. Sears*, 268 Neb. 952, 689 N.W.2d 807, 834 (2004)). A defendant may be "liable for the unjust benefit it receives—and not the harm sustained by the plaintiff."[6] *Id.* (citing *Trieweiler*, 268 Neb. 952, 689 N.W.2d at 834). Thus, it is possible for unjust enrichment to give the plaintiff something, "such as the defendant's wrongful gain, that plaintiff did not previously possess." *Infogroup, Inc. v. DatabaseLLC*, 95 F. Supp. 3d 1170, 1197 (D. Neb. 2015) (citing Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011)).

Trimble has alleged that, since 2016, Defendants have earned "revenues and profits" by "enter[ing] and occup[ying]" the Property for commercial hunting purposes without Trimble's permission. Filing 1 at 4-5. Defendants allegedly (1) removed the "no hunting" and "no trespassing" signs from the fence line, (2) entered the Property to install wildlife cameras and attract animals, (3) used photographs of the Property on their website to promote their commercial hunting business, and (4) used the Property to hunt and kill wild animals. Filing 1 at 4-5. Trimble has thus alleged that Defendants obtained "a benefit by conscious interference with [Trimble's] legally protected interests." *See Infogroup, Inc.*, 95 F. Supp. 3d at 1198 (applying the principles of

---

[6] Defendants argue unjust enrichment and disgorgement are confined to the quasi-contract context and only allow disgorgement or restitution in the amount of damages a plaintiff sustains. *See* Filing 14 at 7-9. The Court declines to adopt such a narrow view of unjust enrichment given case law's clear rejection of such.

the Restatement (Third) of Restitution and Unjust Enrichment § 1 and noting that the Nebraska Supreme Court has adopted the Restatement (Third) view of unjust enrichment). These allegations show a benefit received and retained by Defendants through unlawful and tortious means. Because Nebraska law requires the recipient of an inequitably or unconscionably obtained and retained benefit to pay for the reasonable value of the benefit received, Trimble has stated a claim for unjust enrichment and disgorgement of any of Defendants' unjustly gained benefits.

### D. Motion to Strike

Defendants seek to strike Trimble's claim for punitive damages on the basis that Nebraska law controls and does not allow punitive damages. Filing 14 at 9-11. Trimble does not argue that Nebraska law permits punitive damages but instead argues that the Court should wait to conduct a choice-of-law analysis until a later time when more facts are before it. Filing 17 at 10-12. In addressing these arguments and ultimately striking Trimble's claim for punitive damages, the Court lays out (1) the standard for striking under Fed. R. Civ. P. 12(f), (2) the choice-of-law analysis for determining whether New Jersey or Nebraska law governs this case, and (3) Nebraska's law on punitive damages.

Rule 12(f) permits the Court to strike certain material from a pleading as follows:

The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).

"Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citing *Nationwide Ins. Co. v. Cent. Mo.*

*Elec. Coop., Inc.*, 278 F.3d 742, 748 (8th Cir. 2001)). "Striking a party's pleading, however, is an extreme and disfavored measure." *Id.* (citing *Stanbury Law Firm*, 221 F.3d at 1063). But, "an averment with no basis in law may be stricken." *Factory Mut. Ins. Co. v. Neb. Beef, Inc.*, No. 8:09-CV-159, 2009 WL 2886315, at *2 (D. Neb. Sept. 2, 2009).

To determine whether Trimble's claim for punitive damages has a basis in law, the Court must necessarily determine whether Nebraska law, which prohibits punitive damages, or New Jersey law, which allows for punitive damages, applies. "Federal district courts, sitting in diversity, must apply the choice-of-law rules of the state in which the court sits." *Bryan Mem'l Hosp. v. Allied Prop. & Cas. Ins. Co.*, 163 F. Supp. 2d 1059, 1064 (D. Neb. 2001) (citing *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994).

The parties agree that the Nebraska Supreme Court resolves conflicts of law involving tortious conduct and damages by applying the "most significant relationship" test enumerated in the Restatement (Second) of Conflict of Laws § 145 (1971). *See O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 140, 903 N.W.2d 432, 459 (2017) (applying the most significant relationship test in a personal injury case).

For torts generally, the "[c]ontacts to be taken into account [in determining the most significant relationship]" include, "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145.

Courts also consider that "[c]omment d. of § 171 [of the Restatement] addresses exemplary or punitive damages and directs that '[t]he law selected by application of the rule of § 145 determines the right to exemplary damages.'" *O'Brien*, 298 Neb. at 140–41, 903 N.W.2d at 459.

11

Here, any injury occurred at or on the Trimble Property that is located in Nebraska. This factor favors application of Nebraska law. Second, the majority of and most relevant portions of the alleged conduct of entering the Property without permission, removing signs, and killing animals all occurred in Nebraska.[7] Filing 1 at 4-5. This factor also favors application of Nebraska law. Third, Trimble is a South Dakota resident while Defendants are both New Jersey residents. Filing 1 at 1. This factor favors application of New Jersey law. Fourth, the only relationship between the parties arises from the alleged wrongful conduct which occurred in Nebraska. Thus, this factor counsels in favor of this Court applying Nebraska law. Finally, Nebraska, as the state in which the Property is located, has the strongest policy interest in protecting property rights and protecting against trespass. Nearly all factors show Nebraska has the most significant relationship with this lawsuit, and thus Nebraska law controls.

The Nebraska Constitution provides:

> [A]ll fines [and] penalties . . . arising under the general laws of the state . . . shall belong and be paid over to the counties respectively where the same may be levied or imposed . . . . All such fines [and] penalties . . . shall be appropriated exclusively to the use and support of the common schools in the respective subdivisions where the same may accrue . . . .

Neb. Const. art. VII, § 5.

"Under Nebraska law, 'punitive, vindictive, or exemplary damages contravene Neb. Const. art. VII, § 5, and thus are not allowed in this jurisdiction.'" *O'Brien*, 298 Neb. at 139, 903 N.W.2d at 458 (quoting *Distinctive Printing & Packaging Co. v. Cox*, 232 Neb. 846, 857, 443 N.W.2d 566,

---

[7] Trimble pled and argues "the profits were realized in New Jersey, and . . . the commercial hunting activities" were organized in New Jersey. Filing 1 at 5-6; Filing 17 at 11. However, these factual allegations alone cannot form the basis for a trespass or unjust enrichment claim without the underlying wrongful conduct that occurred in Nebraska.

574 (1989)). Applying Nebraska law, punitive damages are prohibited. Accordingly, the Court will strike Trimble's claim for punitive damages.[8]

### III.   CONCLUSION

For the foregoing reasons, the Court finds it has subject-matter jurisdiction and grants Defendants' Motions to Dismiss for failure to state claims for violations of the Lacey Act with prejudice because (1) the statute does not provide a private right of action; (2) Plaintiff concedes as much; and (3) Plaintiff does not request leave to amend. The Court denies Defendants' Motions to Dismiss Plaintiff's replevin and unjust enrichment and disgorgement claims. Further, the Court grants Defendants' Motion to Strike Plaintiff's claim for punitive damages. Plaintiff's remaining claims against Defendants include unjust enrichment and disgorgement, replevin, and trespass.

IT IS THEREFORE ORDERED:

1. Defendants' Motions to Dismiss (Filing 13; Filing 16) are granted in part and denied in part;

2. Plaintiff's claims for violations of the Lacey Act and Nebraska's criminal trespass statute are dismissed with prejudice; and

3. Defendants' Motions to Strike Plaintiff's claim for punitive damages (Filing 13; Filing 16) are granted, and Plaintiff's request for punitive damages is stricken.

Dated this 2nd day of June, 2020.

BY THE COURT:

Brian C. Buescher
United States District Judge

---

[8] Trimble may, if he can do so in good faith, seek leave to reassert his claim for punitive damages should additional facts arise showing New Jersey law applies. However, the Court cannot fathom what facts could be alleged resulting in a colorable argument that New Jersey law applies to allegations of illegal hunting on Nebraska land.